```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

```
DIANNE LEWIS,                      :

     Plaintiff,                    :

vs.                                :
                                          CIVIL ACTION 08-0583-CB-M
MICHAEL J. ASTRUE,                 :
Commissioner of
Social Security,                   :

     Defendant.                    :
```

## REPORT AND RECOMMENDATION

In this action under 42 U.S.C. 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*). The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was waived in this action (Doc. 14). Upon consideration of the administrative record and the memoranda of the parties, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Dianne Lewis.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evi-

dence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-five years old, had completed a high school special education curriculum, and had no relevant previous work experience (Doc. 10 Fact Sheet).  In claiming benefits, Plaintiff alleges disability due to mental retardation (Doc. 10).

The Plaintiff filed an application for SSI on July 18, 2005 (*see* Tr. 23).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Lewis was capable of performing work that exists in significant numbers in the national economy (Tr. 20-35).  Plaintiff requested review of the hearing decision (Tr. 18-19) by the Appeals Council, but it was denied (Tr. 7-9).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Lewis alleges the single claim that she meets the requirements of Listing 12.05C (Doc. 10).  Defendant has responded to—and denies—this claim (Doc. 11).  The relevant evidence of record follows.

On February 16, 1987, at the age of fifteen, Lewis underwent a psychological evaluation through her school (Tr. 228-32).  On

the WISC, Plaintiff scored a Verbal IQ of 54, a Performance IQ of 58, and a Full Scale IQ of 52 (Tr. 228), placing her at the lowest percentile of children her same age.  Plaintiff was classified as mentally retarded, but educable.  The examiner indicated that he thought that this was an accurate estimate of Lewis's current level of intellectual functioning.

On May 8, 2001, Psychologist Nina E. Tocci conducted an examination in which it was noted that Lewis behaved in an immature manner, but was oriented to time, place, person, and situation (Tr. 124-26).  Plaintiff had normal attention and concentration; her affect was appropriate and her mood was euthymic.  Lewis had little insight, but "demonstrated the ability to make informed personal and financial decisions" (Tr. 125).  The Wechsler Adult Intelligence Scale - Third Edition (WAIS-III) was administered and Lewis scored a Verbal IQ of 60, a Performance IQ of 59, and a Full Scale IQ of 56; the results were considered valid.  In summary, however, Tocci stated the following:  "The results of testing indicate that Ms. Lewis is currently functioning within the mentally retarded range of intellectual ability. . . . While the scores are rather low but consistent with past scores, her behavior during the interview suggested that she was deliberately attempting to misrepresent her condition" (Tr. 126).  The Psychologist's impression was that Plaintiff was malingering.

On October 10, 2005, Psychologist Tocci conducted a second examination in which she stated that Plaintiff was one hour late for her appointment, but appeared neat and well-groomed (Tr. 240-42).  Her affect was appropriate, restricted, and stable; she described herself as sad.  Lewis was oriented to time, place, person, and situation; she had fair attention and concentration.  Plaintiff "demonstrated a poor fund of information and comprehension" and her ability to abstract was limited (Tr. 241).  Her thought content was appropriate; she had "a goal-directed thought organization" (Tr. 242).  Lewis had "some insight into her behavior" and "fair social judgment," but would require assistance with personal and financial decisions (*id.*).  Tocci indicated that Plaintiff was functioning within the mentally retarded range of intellectual ability; her prognosis was limited.

A consultative examination was performed on February 7, 2007 by Donald W. Blanton, a licensed professional counselor, who found Lewis to have logical thoughts and conversation with intact associations (Tr. 266-70).  Blanton noted no confusion, but Lewis was depressed; there was no psychomotor retardation.  Plaintiff was oriented in four spheres, had limited insight and only fair judgment.  The WAIS-III was attempted, but Lewis did not put forth good effort; her scores were a Verbal IQ of 53, a Performance IQ of 54, and a Full Scale IQ of 49.  The Counselor

stated that "[t]his score, however, was not felt to be valid due to her lack of effort" (Tr. 267).  The Wide-Range Achievement Test (Revised III) was also administered, but Blanton, again, felt that the results were invalid.  The Counselor concluded that Lewis probably was mentally retarded though in the 60-to-70 IQ range.  His impression was that she was malingering.  Blanton completed a Mental Medical Source Opinion Form which indicated that Plaintiff had some mild limitations, but was markedly limited in her ability to use judgment in detailed or complex work-related decisions or in understanding, remembering, and carrying out detailed or complex instructions (Tr. 269-70).

In his decision, the ALJ gave substantial weight to the conclusions of Blanton, as they were not inconsistent with other evidence of record, including the October 2005 report by Psychologist Tocci (Tr. 33).  He went on to find that although Plaintiff had lifelong diminished mental abilities, she was capable of working as she had presented no valid, current IQ test which met the Listing requirements (Tr. 20-35).  The ALJ also found that Lewis had no severe physical impairments (Tr. 26).

Plaintiff claims that she meets the requirements for Listing 12.05C.  More specifically, Lewis asserts that the ALJ improperly found that the scores from the IQ tests she has taken were

5

invalid (Doc. 10, pp. 3-4).[1]

The Court notes that the introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2007).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2008).

The thrust of Plaintiff's argument is that the ALJ should have accepted the IQ scores from when she was fifteen and determined that she was disabled (Doc. 10, p. 4).  However, the regulations state the following:

> IQ test results must also be sufficiently current for accurate assessment under 112.05.  Generally, the results of IQ tests tend to stabilize by the age of 16.  Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior.  IQ test results obtained

---

[1]The Court notes that Plaintiff has not asserted that she has "a physical or other mental impairment imposing an additional and significant work-related limitation of function" as required in Listing 12.05C (Doc. 10, pp. 3-4).

>     between ages 7 and 16 should be considered
>     current for 4 years when the tested IQ is
>     less than 40, and for 2 years when the IQ is
>     40 or above.  IQ tests results obtained
>     before age 7 are current for 2 years if the
>     tested IQ is less than 40 and 1 year if at 40
>     or above.

20 C.F.R., pt. 404, subpart P, app. 1 § 112.00(D)(10) (2008). Lewis was only fifteen at the time she was first tested, so under the regulations, those results would no longer be considered current.

Plaintiff has been tested twice since those high school scores were obtained.  Psychologist Tocci tested Lewis and indicated that she thought the results were valid; nevertheless, she indicated that Plaintiff was malingering (Tr. 124-26).  At the time of the most recent tests, Blanton stated that the test results were invalid because of Lewis's lack of effort (Tr. 266-68).

The Court finds that the ALJ's decision not to rely on Lewis's IQ test results from twenty years earlier was proper. The ALJ's finding that the intervening years and evaluations were a more reliable indication of Plaintiff's abilities is supported by substantial evidence.

Lewis has raised a single claim in bringing this action. That claim lacks merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402

U.S. at 401.  Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Michael J. Astrue and against Plaintiff Dianne Lewis.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the

objection may be deemed an abandonment of the
objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 19th day of May, 2009.

                                            s/BERT W. MILLING, JR.
                                            UNITED STATES MAGISTRATE JUDGE